# United States District Court
## Northern District of Indiana
## Hammond Division

MELVIN WILLIAMS,          )
                                    )
      Plaintiff,          )
                                    )
                 v.         )      Case No.:  2:08-CV-364 JVB
                                    )
NEW CENTURY MORTGAGE    )
CORPORATION, et al.         )
                                    )
      Defendants.      )

## OPINION AND ORDER

*Pro se* Plaintiff, Melvin Williams, obtained a financial loan and purchased residential property in Merrillville, Indiana, on October 2, 2008.  Plaintiff then discovered undisclosed defects and made substantial investments to repair the property.  Plaintiff filed suit against Defendant Carrington Mortgage Services LLC, among others, for making a number of alleged misrepresentations throughout the loan process.  Plaintiff filed suit against Carrington, individually, for fraud upon the Court, intentional misrepresentation and predatory lending, unjust enrichment, negligence, unconscionability, and the Indiana Consumer Fraud and Deceptive Business Practices Act.

Defendant Carrington moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) contending that Plaintiff can prove no set of facts entitling him to relief.  Having reviewed the parties' submissions, the Court grants the motion for summary judgment.

**A. Jurisdiction**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1640.

**B. Factual Background**

Plaintiff, an Indiana resident, applied for a loan and purchased residential property located at 6966-6976 Jackson Court in Merrillville for $265,000 on October 2, 2006. Plaintiff obtained a loan from Defendant New Century Mortgage Corporation at an 11.284% interest rate to purchase the property. The loan application was reportedly taken over the phone by Defendant Louise Blackmon,[1] a real estate broker. Plaintiff purports that Blackmon recommended the mortgage company, contacted the appraiser, and brought the parties together.

Plaintiff went to Blackmon's real estate office to sign the loan application and mortgage disclosures. Plaintiff reported that no loan officer or mortgage officer was present at the time he signed the loan documents. Plaintiff contends that Blackmon "participated in a scheme to have the property over appraised." (Compl. ¶ 27.) Additionally, Plaintiff claims, "Blackmon used Plaintiff's trust in her to convince him that having a professional inspection of the property was not necessary." (*Id.* at ¶ 29.) Plaintiff alleges that Blackmon failed to provide a Good Faith Estimate or advise him of alternative loan options.

Plaintiff reportedly discovered defects to the property after the purchase. Plaintiff contends that he was forced to withdraw over $44,000 from his 401K plan to repair

---

[1] Plaintiff's and Carrington's documents name the individual defendant differently. Plaintiff's Complaint names the defendant "Elouise Blackman." Carrington's motion for summary judgment names the defendant "Louise Blackmon." The Court will proceed by referring to the defendant as Louise Blackmon.

defects on the property that were not disclosed before the purchase.  Plaintiff alleges to have spent over $50,000 in total repairs.

On July 2, 2007, Carrington was retained to service Plaintiff's loan.  Carrington was responsible for collecting payments and monitoring the property; however, it was not involved in the original loan process.  (Def. Mem. 3.)


**C.  Procedural History**

On December 19, 2008, Plaintiff filed suit against the Defendants.  Plaintiff argues that Carrington is liable to him for the following claims:  (I) fraud upon the Court; (II) intentional misrepresentation and predatory lending; (III) unjust enrichment; (IV) negligence; (V) unconscionability; and (VI) Indiana Consumer Fraud and Deceptive Business Practices Act.  Plaintiff first claims that he was fraudulently injured by a foreclosure action filed by plaintiff Wells Fargo Bank as Trustee for Carrington in the Circuit Court of Lake County.  Specifically, Plaintiff argues that "upon information and belief, the plaintiff is not the holder or the owner of the original note and mortgage" and that he has "been harmed by the filing of an illegal foreclosure."  (Compl. ¶ 56.)  In Claims II–VI, Plaintiff argues that Carrington misrepresented information and "acted unlawfully with regard to [Plaintiff] obtaining financing to allow him to purchase the subject property."  (Def. Mem. 4.)

On April 24, 2009, Carrington moved for summary judgment contending that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law.  On May 29, 2009, United States Magistrate Judge Andrew P. Rodovich ordered Carrington to serve notice of the motion for summary judgment upon the *pro se*

Plaintiff pursuant to *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), and Local Rule 56.1(e).  The Court extended the deadline for Plaintiff to respond to the summary judgment motion to thirty days after the *Timms* notice, which Carrington gave on May 29, 2009.

Carrington also submitted an affidavit by Pamela Rigg, given on April 21, 2009, in support of the motion for summary judgment.  Rigg was the Vice President in the Quality Assurance Department at Carrington Mortgage Services.  She reported:

> "On or about July 2, 2007, the servicing of a loan made to Williams in the principal amount of $265,000 was transferred to Carrington.  The Loan was originated by New Century Mortgage Corporation and closed approximately nine months before Carrington began to service it.
>
> The Loan was used to purchase the property commonly known as 6966-6976 Jackson Court, Merrillville, Indiana.
>
> Carrington did not participate in the origination of the Loan.
>
> Carrington is not related to New Century Mortgage Corporation or any of the other defendants in this case, nor does Louise Blackmon work for Carrington."
>
> (Rigg Aff. ¶¶ 4–8.)

Plaintiff did not respond to the motion for summary judgment filed by Carrington on May 29, 2009.


## C.  Summary Judgment Standard

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further

requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, 477 U.S. 242, 249–50* (1986).

**D. Discussion**

As a preliminary matter, the Court recognizes that "allegations in *pro se* pleadings are to be construed liberally, applying substantially less stringent standards than those applied to pleadings drafted by professional counsel." *Kincaid v. Vail*, 969 F.2d 594, 598 (7th Cir. 1992). However, "*pro se* litigants must [nevertheless] follow procedural rules." *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) (citing *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2002)). The Plaintiff's *pro se* status does not place them in a position to disobey court orders and directives. *See Mitchell v. Union Pac. R.R. Co.*, 501 F.3d 794, 796 (7th Cir. 2007) (citing *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996)).

The Court additionally demands that a defendant that files a motion for summary judgment must warn a *pro se* plaintiff of the consequences. *See Timms*, 953 F.2d at 285; *see also Faulkner*, 689 F.2d at 100.

Here, Carrington served proper notice to Plaintiff on May 29, 2009. Pursuant to Local Rule 56.1(a), the *pro se* Plaintiff had thirty days to respond. The thirty-day period accrued on June 29, 2009, without a response from the Plaintiff. Thus, Plaintiff has waived his right to contradict the assertions in Carrington's motion for summary judgment.

But despite Plaintiff's inaction, the Court must still determine whether Defendant Carrington is entitled to summary judgment as a matter of law. The Court finds that the record supports granting the motion for Claims I–VI against Carrington.

In Claim I, fraud upon the Court, Plaintiff alleges that Carrington is liable to him for the harm he endured from the foreclosure action filed by Wells Fargo Bank. Plaintiff,

however, fails to meet the heightened pleading standards set out in Rule 9(b) of the Federal Rules of Civil Procedure.

While Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Rule 9(b) embodies the exception to this otherwise lenient rule by requiring that fraud be pleaded with particularity. *Payton v. Rush–Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 626–27 (7th Cir. 1999). The pleader must identify the person who made the misrepresentations, the time, place and content of the misrepresentation, and the method by which the misrepresentations were communicated to the complaining party. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). These requirements have been described as the "who, what, when, where, and how: the first paragraph of any newspaper story." *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Additionally, "Rule 9(b)'s particularity requirement is not satisfied by allegations of fraud based on 'information and belief,' unless the facts are peculiarly within the adversary's knowledge." *Biomet, Inc. v. Fields*, 2008 WL 5191496, at *9 (N.D. Ind. 2008) (citing *Richter v. Corp. Fin. Assocs., LLC*, 2007 WL 1164649, at *2 (S.D. Ind. Apr. 19, 2007))

The Court finds that Plaintiff failed to state a claim for fraud with particularity because the pleadings did not provide the "who, what, when, where and how" facts that fraud pleadings demand. Plaintiff's claim relies on the "information and belief" that there is no record indicating that Carrington was assigned the mortgage at question or that Wells Fargo is the holder or the owner of the original note and mortgage. Plaintiff's fraud claim, without additional facts, cannot be sustained merely on "information and belief." Thus, Carrington is entitled to summary judgment for Claim I.

In Claims II–VI, Plaintiff pleads that Carrington is liable to him for intentional misrepresentation and predatory lending, unjust enrichment, negligence, unconscionability, and Indiana Consumer Fraud and Deceptive Business Practices Act. Plaintiff's arguments rely on allegations that Carrington failed to make accurate representations and made misrepresentations throughout his acquiring a loan and purchasing the residential property.

Plaintiff must show that Carrington participated in the loan process to establish a colorable claim against Carrington. Rigg's affidavit indicates that Carrington was retained to service Plaintiff's loan on July 2, 2007, about nine months after the closing of the original loan and purchase in October 2006. Rigg also declared that Carrington did not participate in the origination or purchase of Plaintiff's loan that was used to purchased the property.

Thus, the record, combined with Plaintiff's failure to contradict the assertions in Carrington's motion, supports granting Defendant Carrington's motion for summary judgment.

**E. Conclusion**

The Court grants the motion for summary judgment. (DE 7)

SO ORDERED on July 23, 2009.

       _s/ Joseph S. Van Bokkelen_____
       JOSEPH S. VAN BOKKELEN
       UNITED STATES DISTRICT JUDGE
       HAMMOND DIVISION